IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| AGNES L. GATSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| MIDLAND FUNDING, LLC, | ) | 1:16-cv-39 |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC., ONEMAIN FINANCIAL | ) | |
| GROUP, LLC, & TRANS UNION, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, by and through her attorney, and avers against the Defendants the following:

### INTRODUCTION

1. The Plaintiff seeks damages under the Fair Debt Collection Practices Act and Fair Credit Reporting Acts for Defendants' reporting and seeking collection of a debt the Plaintiff did not owe and having accessed the Plaintiff's credit reports with no legitimate basis for doing so.

### PARTIES

2. Plaintiff is a resident citizen of Mobile County, Alabama and has been so for over two years.

3. Plaintiff is a "consumer" as defined by both the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.

4. Defendant Midland Funding, LLC ("Midland") is a California corporation whose principal place of business is 8875 Aero Dr, Ste 200, San Diego, CA 92123.

5. Defendant Midland Credit Management, Inc. ("MCM") is a California corporation whose principal place of business is 8875 Aero Dr, Ste 200, San Diego, CA 92123.

6. The principal purpose of Midland Funding and MCM is the collection of debts using the mails and telephone, and these two regularly attempt to collect debts alleged to be due another.

7. Midland Funding and MCM are "debt collectors" according to 15 U.S.C. §1692a(6).

8. Midland Funding and MCM are both "users of consumer reports" and "furnishers of information to consumer reporting agencies" as those terms are defined by 15 U.S.C. §1681a.

9. OneMain Financial Group, LLC ("OneMain") is a foreign corporation whose principal place of business is 100 International Drive, 18th Floor, Baltimore, MD 21002.

10. OneMain is in the business of making consumer loans in Alabama and other states.

11. OneMain is a "furnisher" of information to consumer reporting agencies as defined by 12 C.F.R. §41.41(c) & §222.41(c).

12. Trans Union is a foreign corporation engaged in the business of compiling and

selling credit reports relating to consumers, and whose principal place of business is 555 W. Adams St, Chicago, IL 60661.

13. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f), as it regularly assembles and evaluates credit information on consumers in the United States for the purpose of creating and selling consumer reports.


## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 15 U.S.C. §1692k(d) to hear Plaintiff's FDCPA claims in this matter and 15 U.S.C §1681p to hear Plaintiff's FCRA claims.

15. This Court has supplemental jurisdiction to hear Plaintiff's state law claims as they arise from the same series of transactions and events as the federal question claims.

16. This Court has personal jurisdiction over the Defendants because the Defendants have engaged in direct communications attempting to collect debts from Alabama resident citizens dwelling within this state.

17. Venue is proper as substantially all of the events or omissions giving rise to the Plaintiff's claims occurred within this district.


## FACTUAL ALLEGATIONS

18. At all times relevant to this proceeding, Midland and MCM were acting in an attempt to collect from the Plaintiff a debt they claimed had been owed to OneMain.

**The State Court Collection Suit**

19. On or about February 6, 2015, Midland filed a lawsuit, Case 02-CV-2015-900369.00, in the Circuit Court of Mobile County.  A copy of the Complaint in that case is attached as Exhibit A.

20. The complaint in Midland's lawsuit against the Plaintiff stated the following:

    (a)    That OneMain issued a credit card to the Plaintiff;

    (b)    That the Plaintiff had received and used this purported credit card;

    (c)    That the Plaintiff had defaulted on an obligation to pay OneMain for such credit card;

    (d)    That OneMain had mailed statements to the Plaintiff reflecting this supposed debt;

    (e)    That OneMain had assigned this supposed debt to Midland;

    (f)    And that the Plaintiff was, on February 6, 2015, indebted to Midland in the amount of $3,320.23.

21. None of these statements were true.

22. The Plaintiff had no account with OneMain.

23. The Plaintiff had not borrowed money from OneMain.

24. The Plaintiff had not received a credit card from OneMain.

25. The Plaintiff had not used a credit card from OneMain.

26. The Plaintiff had not defaulted on any consumer debt obligation to OneMain.

27. The Plaintiff did not owe OneMain or Midland $3,320.23.

28. The only reason Midland made such specific allegations against Mrs. Gatson was

to give its bogus lawsuit a veneer of legitimacy.

29. Midland had undertaken no real investigation into its allegations against Mrs. Gatson before it filed a lawsuit against her.

30. Had Midland made an investigation into the facts, it would have known that it had no legitimate basis to sue Mrs. Gatson.

31. Because of Midland's baseless lawsuit against her, Mrs. Gatson was required to hire an attorney and spend time and money defending herself.

32. On or about August 25, 2015, Midland made several statements in response to interrogatories that had been propounded by the Plaintiff, including:

   (a)   "[The Plaintiff] acknowledged amounts due on the account, among other methods, by receipt of periodic billing statements and failure to pay them."

   (b)   "Account statements were provided to [the Plaintiff] at the address provided by [the Plaintiff]."

   (c)   "As of the date the account was charged off, $3,320.23 was due and owed."

33. Those statements made in response to interrogatories were false.

34. On or about August 24, 2015, an "Authorized Representative" named Jessica Dolan signed a sworn verification of the interrogatory responses.

35. On February 12, 2015, another affidavit had been sworn to by another agent of Midland, one Rhonda Schubloom.  A copy of the affidavit is attached as Exhibit B.

36. In her affidavit, Ms. Schubloom stated, *inter alia*: "[Midland] is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title, and interest to [the Plaintiff's] ONEMAIN FINANCIAL, INC., account

XXXXXXXXX4928 (MCM Number 8552504721)."

37. Ms. Schubloom's affidavit also stated that the Plainitff "owed a balance of $3,320.23 as of 2015-02-06."

38. Finally, the Schubloom affidavit certified under penalty of perjury that its statements were true and correct.

39. Unfortunately, it was not all true and correct, because the Plaintiff did not have a OneMain account, and therefore Midland had no rights against her at all.

40. The false statements made in the Schubloom affidavit and the interrogatory responses were made in an attempt to collect the alleged debt from the Plaintiff.

41. Discovery was completed, and the state court lawsuit was set for trial on December 16, 2015.

42. Long after the Plaintiff had undertaken the cost and effort of defending herself, Midland moved to dismiss its lawsuit with prejudice, and said motion was granted.

43. Had Defendants undertaken a reasonable investigation into Plaintiff's disputes, they would have realized that it had no right to ask her for any money, much less file a lawsuit against her.

44. The filing of a lawsuit is a very serious and potentially devastating collection mechanism.

45. Before filing a lawsuit, a debt collector should do everything it can to assure that it is not suing the wrong person.

46. Midland didn't do that, and is therefore liable to the Plaintiff for the trouble it has caused her.

### Plaintiff's Attempts to Correct Her Credit Report

47. Upon information and belief, Midland and OneMain had been reporting the alleged debt to various consumer reporting agencies since some time in 2012.

48. Upon information and belief, Midland reported to at least one consumer reporting agency that the Plaintiff owed $3,671.

49. Upon information and belief, OneMain reported to at least one consumer reporting agency that the Plaintiff owed an unpaid consumer debt.

50. Plaintiff did not discovery this until approximately February 2015.

51. The publication of a debt she did not owe on her credit report was alarming to the Plaintiff personally, and was damaging to her reputation, ability to obtain credit, and the cost of credit.

52. On or about February 25, 2015, Plaintiff sent each of the three nationwide consumer reporting agencies a letter disputing the alleged debts to Midland and OneMain, and requesting that these alleged accounts be deleted from her credit file.  Copies of her dispute letters are attached as Exhibit C.

53. Upon information and belief, at least one of the nationwide consumer reporting agencies forwarded notice of Plaintiff's dispute to Midland and OneMain.

54. On March 18, 2015 Equifax Information Services, LLC, ("Equifax") responded to the Plaintiff's dispute letter and summarized the information that Equifax received from Midland and OneMain regarding the Plaintiff's dispute.  A copy of the response is attached as Exhibit D.

55. Despite having received notification of Plaintiff's dispute from Equifax, and

despite having received Plaintiff's answer denying their allegations in the state court lawsuit, Midland refused to correct its reporting of the alleged debt.

56. As of March 2015, Midland reported that the Plaintiff owed a balance of $3,671, that the Plaintiff was $3,671 past due, and that the Plaintiff had first become "delinquent" on the account in April 2011.

57. All of these representations were false.

58. As of March 2015, OneMain reported that the Plaintiff had owed a charged-off debt to it, that such debt had been sold to Midland, and that the Plaintiff had opened the account in July 2010.

59. All of these representations were false.

60. As of January 2016, OneMain had still refused to correct its reporting, and continues to falsely report that the Plaintiff owed it an unpaid debt that was charged off and sold to Midland.

61. These false representations continue to damage the Plaintiff's reputation, emotional wellness, and ability to obtain credit.

62. This credit report was ostensibly obtained for the purpose of reviewing an account owed to Midland by the Plaintiff.

63. Defendant MCM obtained and/or viewed at least one consumer report relating to the Plaintiff in November of 2015.

64. These inquiries into the Plaintiff's credit reports were unauthorized by the Plaintiff.

65. Credit inquiries made by alleged creditors of a consumer have a tendency to reduce such a person's apparent creditworthiness and ability to borrow.

66. The Defendant's inquiries into Plaintiff's credit reports did in fact have a negative impact on the Plaintiff's credit profile and ability to access credit.

67. It is a pattern and practice of Midland to file lawsuits against consumers like the Plaintiff without undertaking any real investigation into the factual basis of the alleged debts.

68. The Midland's and MCM's courses of action in attempting to collect this debt have caused the Plaintiff damages in the following ways:

   (a) She had to hire a lawyer to defend her from the lawsuit;

   (b) She had to take time off from work and family to defend herself from the Midland's false allegations;

   (c) This entire ordeal has been mentally and physically taxing, and has caused him natural anger, frustration, stress, humiliation, fear for his family's financial well-being, and unjustified and abusive invasion of his personal privacy;

   (d) Her reputation and ability to obtain credit have been harmed, and the cost of credit has been increased for her.

69. The reporting of this debt by Midland, OneMain, and TransUnion have caused the Plaintiff damages, including but not limited to:

   (a) time and money spent trying to correct their errors;

   (b) damage to her reputation, emotional wellness, and ability to obtain credit;

   (c) credit denial and/or increased credit cost.

<u>COUNT ONE AGAINST MIDLAND & MCM: 15 U.S.C. §1692e</u>

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 above.

71. 15 U.S.C.§1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

72. 15 U.S.C. §1692e(2)(A) specifically prohibits the false representation of "the character, amount, or legal status of any debt."

73. Defendants Midland and MCM violated 15 U.S.C. §1692e(2)(A) by falsely representing to the Plaintiff and to the Mobile County Circuit Court that Plaintiff owed $3,320.23 to Midland.

74. Defendants Midland and MCM violated §1692e by falsely representing to the Plaintiff and to the Mobile County Circuit Court that the Plaintiff had received a credit card from OneMain.

75. Defendants Midland and MCM violated §1692e by falsely representing to the Plaintiff and to the Mobile County Circuit Court that the Plaintiff had defaulted on a credit card obligation to OneMain.

76. Defendants Midland and MCM violated §1692e by falsely representing to the Plaintiff and the District Court that OneMain had mailed statements to the Plaintiff.

77. Defendants Midland and MCM violated §1692e by falsely stating in sworn interrogatory responses that "[The Plaintiff] acknowledged amounts due on the account, among other methods, by receipt of periodic billing statements and failure to pay them."

78. Defendants Midland and MCM violated §1692e by falsely stating in sworn

interrogatory responses that "account statements were provided to [the Plaintiff] at the address provided by [the Plaintiff]."

79. Defendants Midland and MCM violated §1692e by falsely stating in sworn interrogatory responses that "as of the date the account was charged off, $3,320.23 was due and owed."

80. Defendants Midland and MCM violated §1692e by falsely stating in the Schubloom affidavit that the Plaintiff had an unpaid account with OneMain and that the Plainitff "owed a balance of $3,320.23 as of 2015-02-06."

81. 15 U.S.C. §1692e(8) prohibits the communication "to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

82. Defendants Midland and MCM violated 1692e(8) by falsely representing to one or more consumer reporting agencies that the Plaintiff owed Midland money.

83. Defendants Midland and MCM violated 1692e(8) by falsely representing to one or more consumer reporting agencies that Plaintiff owed Midland $3,671, when in fact Plaintiff owed Midland $0.00.

84. Defendants Midland and MCM violations of 1692e have caused the Plaintiff damages as stated above.

85. As a result of Defendants Midland and MCM violations of the 15 U.S.C. §1692e, Plaintiff is entitled to actual damages, statutory damages, expenses, costs, and reasonable attorney's fees.

COUNT TWO AGAINST MIDLAND AND MCM: 15 U.S.C. §1692f

86. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 above.

87. 15 U.S.C. §1692f prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect a debt."

88. Suing a consumer for a debt that is not owed is an "unfair and unconscionable practice offensive to §1692f,"[1] even if where the consumer once owed the debt.

89. In this case, Mrs. Gatson never owed the alleged debt.

90. As described above, Plaintiff has suffered damage as a result of Midland's unfair and unconscionable lawsuit.

91. As a result of Defendants' violations of 15 U.S.C. §1692f, Plaintiff is entitled to actual damages, statutory damages, expenses, costs, and reasonable attorney's fees.


COUNT THREE AGAINST MIDLAND AND MCM: MALICIOUS PROSECUTION

92. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 above.

93. Midland filed the collection lawsuit against the Plaintiff without undertaking any reasonable investigation into the veracity of its allegations against the Plaintiff.

94. Midland filed the collection lawsuit against the Plaintiff without undertaking any reasonable investigation into whether or not they were suing the right person.

95. After learning that the Plaintiff denied ever opening the alleged account, the Defendants persisted with their lawsuit, requiring the Plaintiff to obtain counsel and litigate the lawsuit.

96. Had Defendants undertaken a reasonable investigation into the relevant facts, it

---

1    *Kimber v. Federal Financial Corp.*  668 F. Supp 1480 (M.D. Ala. 1987).

would have known that it lacked probable cause to sue the Plaintiff.

97. Defendants filed the collection lawsuit maliciously, and with the intent not to obtain a judgment at trial, but rather to use the gravity and embarrassment of a court proceeding to coerce Plaintiff into paying money on a debt she did not owe.

98. It is a regular practice of the Defendants to file lawsuits against unsophisticated consumers without first investigating the veracity of their allegations.

99. Alternatively, Plaintiff avers that Defendants filed the collection lawsuit with reckless disregard for whether or not they were suing the right person.

100.    As a direct result of Defendants' conduct in filing the collection lawsuit, the Plaintiff has suffered damage as described above.

101. The harm that Plaintiff suffered as a result was entirely foreseeable, and was exactly the sort of harm that one would foresee to be the result of filing a baseless lawsuit.

102. For its malicious prosecution of the Plaintiff, the Defendants are liable to the Plaintiff for actual damages and punitive damages.

103. It was foreseeable that the actions of Defendants would lead to the exact sort of harm suffered by the Plaintiff.  Defendants did in fact foresee that its actions would have damaging consequence for the Plaintiff, yet Defendants chose to pursue its course of action regardless.


COUNT FOUR AGAINST MIDLAND AND MCM: 15 U.S.C. §1681b

104. Plaintiff realleges and incorporates by reference paragraphs 1 through 69.

105. Defendants Midland and/or MCM obtained, viewed, or otherwise made use of a

consumer report relating to the Plaintiff in May and/or November of 2015.

106. Defendants had no legitimate purpose for obtaining or using Plaintiff's credit report.

107. Consumer credit reports contain highly sensitive and detailed information about a person's finances and lifestyle.

108. The Fair Credit Reporting Act recognizes this, and contains numerous provisions designed to protect consumers from unnecessary intrusion into their affairs.

109. Particularly, 15 U.S.C. §1681b(f) prohibits any person from obtaining or using a consumer report for any purpose other than those specific enumerated "permissible purposes" listed in 15 U.S.C. §1681b(a)(3).

110. In this case, the Plaintiff had no prior business relationship whatsoever with either of the Defendants.

111. Nor did Plaintiff owe either of Defendants any money on any account which Defendants might have sought to collect or review.

112. Nor did the Plaintiff ever provide Defendants with permission to obtain her reports.

113. Each of the Defendants violated the Fair Credit Reporting Act by obtaining or using the Plaintiff's credit report without a permissible purpose for doing so.

114. The Defendants' violation of the Fair Credit Reporting Act was negligent, and could have been easily avoided by undertaking a reasonable investigation.

115. Alternatively, Defendants' violation of the Fair Credit Reporting Act was intentional or reckless, and done without any regard for whether they were seeking to collect from the right woman.

116. The Defendants' violation of the Fair Credit Reporting Act has harmed the Plaintiff by, *inter alia*, damaging her credit rating and reputation.

117. For such violation, the Defendants are liable to the Plaintiff for actual damages, costs, and attorney's fees, pursuant to 15 U.S.C. §1681o.

118. For their willful violations of the Fair Credit Reporting Act, the Defendants are liable to the Plaintiff for actual damages, statutory damages of up to $1,000, punitive damages, costs, and attorney's fees, pursuant to 15 U.S.C. §1681n.

<u>COUNT FIVE AGAINST MIDLAND AND</u>

<u>COUNT ONE AGAINST ONEMAIN: 15 U.S.C. §1681s-2(b)</u>

119. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 69.

120. The Plaintiff sent multiple letters to consumer reporting agencies explaining that she did not owe either Midland or OneMain any money for the alleged account.

121. Midland and OneMain received notice of the Plaintiff's dispute from at least one consumer reporting agency.

122. Midland failed to conduct a reasonable investigation into the Plaintiff's dispute.

123. OneMain failed to conduct a reasonable investigation into the Plaintiff's dispute.

124. Midland failed to review all relevant information relating to the Plaintiff's dispute.

125. OneMain failed to review all relevant information relating to the Plaintiff's dispute.

126. Midland failed to notify each consumer reporting agency that its reporting of the Plaintiff's liability on the alleged account was incorrect.

127. OneMain failed to notify each consumer reporting agency that its reporting of the Plaintiff's liability on the alleged account was incorrect.

128. Midland failed to modify, delete, or permanently block the reporting of the alleged account against the Plaintiff, even after it became clear that such information as it had reported against her could not be verified.

129. OneMain failed to modify, delete, or permanently block the reporting of the alleged account against the Plaintiff, even after it became clear that such information as it had reported against her could not be verified.

130. Midland and OneMain continued to furnish false information regarding the Plaintiff to consumer reporting agencies, even after learning that she disputed such information.

131. The inaccurate information furnished by Midland and OneMain to the consumer reporting agencies proximately caused damage to the Plaintiff in the following ways:

(a) It harmed her ability to obtain credit;

(b) It increased the cost of what credit the Plaintiff could obtain;

(c) It damaged her reputation and emotional well being;

(d) The Plaintiff spent time and money seeking to correct Defendants' errors.

132. Midland and OneMain's failures to adequately investigate Plaintiff's disputes and correct their reporting was done willfully or with reckless disregard for the Plaintiff's rights.

133. Alternatively, their failures were negligent.

134. The Fair Credit Reporting Act requires that furnishers of consumer credit information undertake reasonable and prompt investigations into consumer disptues.  15 U.S.C. §1681s-2(b).

135. Midland and OneMain have violated the Fair Credit Reporting Act by failing to perform the reinvestigation duties required of them by 15 U.S.C. §1681s-2(b).

136. For their violations of 15 U.S.C. §1681s-2(b), Midland and OneMain are liable to the Plaintiff for all damages sustained as a result, punitive damages, plus statutory damages of up to $1,000, plus costs and attorney's fees.  15 U.S.C. §1681o & §1681n.

## COUNT ONE AGAINST TRANS UNION: 15 U.S.C. §1681i

137. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 above.

138. In 2015, TransUnion published at least one consumer credit report containing false information regarding the Plaintiff.

139. Specifically, TransUnion published at least one consumer report relating to the Plaintiff which indicated that the Plaintiff owed an unpaid debt of over $3,000 to Midland.

140. TransUnion published at least one consumer report which indicated that the Plaintiff had a charged-off account with OneMain that had been delinquent in the past.

141. The Plaintiff sent TransUnion a letter disputing such information and informing TransUnion very clearly that she had owed money to neither OneMain nor

Midland.  *See Exhibit C.*

142. TransUnion received the Plaintiff's dispute letters.

143. TransUnion responded to the Plaintiff's dispute on or about March 25, 2015, but refused to listen to her.

144. Instead, TransUnion continued to report that Mrs. Gatson owed a large unpaid debt to Midland and had previously owed a charged-off debt to OneMain.  A copy of TransUnion's response to the Plaintiff's dispute is attached as Exhibit D.

145. TransUnion failed to conduct a reasonable reinvestigation into the Plaintiff's dispute.

146. TransUnion failed to forward all relevant information regarding the Plaintiff's dispute to the furnishers of such information.

147. TransUnion failed to delete or modify the inaccurate information which were included in its reports regarding the Plaintiff.

148. TransUnion violated 15 U.S.C. §1681i by:

(a) Failing to delete inaccurate information in the Plaintiff's credit file, despite having actual notice of such inaccuracies;

(b) Failing to conduct an adequate reinvestigation;

(c) Failing to forward all relevant information to VCS and/or Gold's;

(d) Failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file;

(e) Relying upon "verification" of disputed information from a source which TransUnion knew or should have known to be unreliable.

149. As a result of TransUnion's violations of 15 U.S.C. §1681i, the Plaintiff suffered damages as described above.

150. TransUnion's actions (and inaction) in handing the Plaintiff's disputes were willful, rendering it liable to the Plaintiff for statutory damages of up to $1,000, punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, as well as costs and attorneys' fees.

151. Alternatively, TransUnion's actions were negligent, rendering it liable to the Plaintiff for actual damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681o.

<u>COUNT TWO AGAINST TRANS UNION: 15 U.S.C. §1681e</u>

152. Plaintiff realleges and incorporates by reference paragraphs 1 - 69 and 137 - 151 above.

153. The errors on Plaintiff's credit report were easily preventable, and were only published due to a failure of TransUnion to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of its consumer reports regarding the Plaintiff.

154. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of its credit reports and credit files regarding the Plaintiff.

155. As a result of these failures and the consequently inaccurate credit reports published against the Plaintiff, the Plaintiff has suffered damages as described above.

156. TransUnion's action and inaction was willful, rendering it liable to the Plaintiff

for actual and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, as well as costs and attorney's fees.

157. Alternatively, TransUnion's actions were negligent, rendering it liable to the Plaintiff for actual damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681o.

WHEREFORE, PREMISES CONSIDERED, Your Plaintiff respectfully prays this Honorable Court Issue a Judgment for the following:

A) Against Midland and MCM and for the Plaintiff, for actual damages arising from the Defendants' violations of the Fair Debt Collection Practices Act;

B) Against Midland and MCM and for the Plaintiff, for statutory damages of One Thousand Dollars ($1000) from each for their violations of the Fair Debt Collection Practices Act;

C) Against Midland and for the Plaintiff, for actual damages and punitive damages for the malicious prosecution of the Plaintiff by Midland;

D) Against Midland, MCM, OneMain, and TransUnion and for the Plaintiff, for actual damages and punitive damages for Defendants' violations of the Fair Credit Reporting Act;

E) Against Midland, MCM, OneMain, and TransUnion and for the Plaintiff, for statutory damages of One Thousand Dollars from each Defendant for their violations of the Fair Credit Reporting Act;

F) Costs, expenses, and reasonable attorneys fees incurred in bringing this action;

G) For such other, further, and general relief as Your Honor deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

RESPECTFULLY SUBMITTED this the 26th Day of January, 2016.

/s/ Judson E. Crump_____
Judson E. Crump
Attorney for Plaintiff

Judson E. Crump, PC
250 Congress Street
Mobile, AL 36603
251.272.9148
judson@judsonecrump.com